*593 OPINION.
Black :
What is the statutory basis to petitioner, for the purposes of computing depreciation and gain or loss, of the assets which it acquired at the time of its organization in 1923 ? Petitioner contends it is “ cost ” to it. [Respondent contends that under the facts stated the basis is the same as it would be in the hands of the several transferors.
The applicable statutory provisions are section 204 (a) (7) and (c) of the [Revenue Act of 1926 and sections 114 (a) and 113 (a) (7) of the Revenue Act of 1928. These provisions of both acts are substantially alike. Those of the 1928 Act read as follows:
SEC. 114. BASIS POR DEPRECIATION AND DEPLETION.
(a) JBasis for depreciation. — The basis upon which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the same as is provided in section 113 for the purpose of determining the gain or loss upon the sale or other disposition of such property.
SEC. 113. BASIS POR DETERMINING GAIN OR LOSS.
(a) Property acquired after February 28, J.91S.- — The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—
* ***** *
(7) TRANSFERS TO CORPORATION WHERE CONTROL OF PROPERTY REMAINS IN SAME persons. — If the property was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 80 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor * * *.
It is clear from the above provisions that petitioner’s contention must be sustained, unless paragraph (7), swpra, applies, in which event the decision would be for the respondent.
Both parties to these proceedings agree that there was a statutory reorganization within the meaning of section 203 (h) (1) (A) of the Revenue Act of 1926 and section 112 (i) (1) (A) of the Revenue Act of 1928. The question as to whether or not under a given state of facts there has been a statutory reorganization is a question of law for the Board to determine and we are not bound by the agreement of the parties on that issue of law. Cf. Nelson v. Commissioner, 75 Fed. (2d) 696, affirming 28 B. T. A. 529. As we view the transaction, however, it is unnecessary to determine whether a statutory reorganization was affected. The additional limitation that a control of the transferred property of 80 per centum or more remain in the same persons or any of them is also necessary in order that the basis shall be the same as in the hands of the transferor. The interest or control referred to in section 113 (a) (7), Revenue Act of 1928, which wre have quoted above, means beneficial ownership. Sec *594 tion 204 (a) (7), Revenue Act of 1926 is the same. Cf. Federal Grain Corporation, 18 B. T. A. 242.
It is our opinion in the instant case that “ immediately after the transfer” the stockholders of the old corporations owned only the common stock of petitioner and did not own any of its preferred stock, which had equal voting rights with the common stock. The common stock amounted to only 66% percent of the total stock issued, which, of course, is less than the 80 percent provided for in the statute. It is our opinion that “ immediately after the transfer ” petitioner’s preferred stock was owned by Parker & Co. It was issued to Parker & Co. and voted by Parker & Co. It was placed in the hands of the escrow agent solely for the protection of the old stockholders, who were to receive the proceeds from the sale to Parker & Co. The old stockholders majr have had and probably did have an equitable lien on both the preferred stock and the bonds and their proceeds, to secure the part of the purchase price which was to be paid them in cash. It was not intended, however, that they should own the bonds and preferred stock except in case of default of Parker & Co. to carry out its part of the agreement. Parker & Co. had agreed to pay $1,800,000 for the preferred stock and bonds— $270,000 on or before January 21, 1924, and $180,000 on or before the 21st of each month thereafter “until the time when all said bonds, and stock are paid for * * *.” Of course, Parker & Co. was selling the preferred stock and bonds to the public at par and had planned on realizing for itself a profit of $200,000 on the deal. The fact that the stock was not paid for immediately by Parker & Co. would not detract from their ownership of it “ immediately after the transfer ” if that was, as we think it was, the intention of the parties. There was a condition that if Parker & Co. should fail to pay for the preferred stock within the specified time, the shares still in the possession of the escrow agent would be delivered to the old stockholders. But this condition never arose. Parker & Co. met each installment in accordance with its agreement, the last payment in full being made on October 17,1924. Under these conditions we think there would be no basis to hold that the 10,000 shares of preferred stock issued the same day as the 20,000 shares of common stock were owned by the stockholders of the old corporation. Cf. H. L. Neuman Co., 16 B. T. A. 538; Ground Gripper Shoe Co., 21 B. T. A. 646; affirmed on another point at 62 Fed. (2d) 654; Leffingwell Rancho Co., 22 B. T. A. 1303, and Hazeltine Corporation, 32 B. T. A. 4. In each of these cases the facts show that the new stock, the ownership of which immediately after the transfer was there in question, was first actually issued by the new corporation to the old stockholders, but because the old stockholders were, at the time of receipt of the new shares, under contractual obligation to *595 sell a substantial block of such new shares to outsiders, we held that immediately after the transfer such block of stock could not be considered as owned by the stockholders of the old corporation or corporations, and, that, therefore, an interest or control in the property transferred did not remain in the same persons or any of them. In the instant case the preferred stock was never issued, even for a brief period of time, to the old stockholders. It was issued to C. D. Parker & Co., the investment bankers, who subsequently sold it to the general public. When the transactions were all completed the old stockholders owned 20,000 shares of the common stock and 2,842 shares of the preferred stock, representing an investment of something more than $1,000,000, and the general public had purchased all the bonds and the remainder of the preferred stock, having voting rights equal to the common stock, representing an investment of nearly $2,000,000. In this sort of a situation it seems clear that the statute intends that the corporation receiving the assets shall get a new basis, based on cost.
We are therefore of the opinion and so hold that immediately after the transfer of the properties of the old corporation to petitioner an interest or control in such properties of less than 80 per centum remained in the same persons or any of them, and that the basis to petitioner is the “ cost ” to it of the properties acquired. Cf. West Texas Refining & Development Co. v. Commissioner, 68 Fed. (2d) 77; Charles Hall, 31 B. T. A. 125; Spang, Chalfant & Co., 31 B. T. A. 121.
Reviewed by the Board.

Decision will he entered wider Rule 50.